<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED HEALTHCARE SERVICES, INC., *et al.*, <br><br> Defendants. | Civil Action No. 24-7375 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant United HealthCare Services, Inc. d/b/a Genesis Diagnostics's ("Defendant") Motion to Dismiss Plaintiff Abira Medical Laboratories LLC's ("Plaintiff") Amended Complaint. (ECF No. 8.) Plaintiff opposed (ECF No. 10), and Defendant replied (ECF No. 12).[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendant's Motion to Dismiss is granted.

---

[1] On February 3, 2025, Defendant filed supplemental authority, which the Court also considers. (ECF No. 13.)

I.    <u>**BACKGROUND**</u>

A.     **Factual Background**[2]

This case is one of over forty lawsuits that Plaintiff has either filed in the District Court of New Jersey or that has been removed to this Court from the Superior Court of New Jersey. *See, e.g.*, *Abira Med. Lab'ys, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 23-3866, 2024 WL 3199835, at *1 (D.N.J. June 26, 2024). In these suits, Plaintiff brings claims against "insurance companies and/or third-party administrators" for their alleged failure to pay Plaintiff for claims it submitted for "services, including but not limited to [coronavirus ("COVID-19")] diagnostic testing that [it] provided to Defendant['s] insureds/claimants." (Am. Compl. ¶¶ 18, 46, ECF No. 7.)

"Plaintiff is a domestic limited liability company organized under the laws of the State of New Jersey" that "perform[s] clinical laboratory, toxicology, pharmacy, genetics, and addiction rehabilitation testing services on specimen" in addition to COVID-19 testing services. (*Id.* ¶¶ 2, 13-14.) Defendant is an insurance company that purportedly "process[es] health insurance/claims in the State of New Jersey" and has its principal place of business in Edina, Minnesota. (*Id.* ¶¶ 3, 18-19.) Plaintiff alleges that its insurance claims "originated when[] the insureds/claimants submitted specimen via molecular swabs, blood samples, etcetera at physicians' offices or at a facility, and they were shipped to the laboratory." (*Id.* ¶ 21.) Plaintiff further alleges that:

> [it] tested the specimens, provided the results to the appointed recipients, and submitted the bill, typically called a claim, to . . . Defendant[] for payment. Pursuant to the [b]enefits clauses or provisions [("Benefits Clause")] of the insurance contracts, Defendant[] w[as] supposed to pay, on behalf of the insureds/claimants, the in-network price of the lab testing services [Plaintiff] provided . . . or where applicable, the reasonable or customary out-of-network fee for [Plaintiff]'s lab testing services.

---

[2] The Court, as it must, accepts as true all of Plaintiff's well-pleaded factual allegations and "construe[s] the [Amended] [C]omplaint in the light most favorable to the [P]laintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

(*Id.*) Defendant, however, "failed to pay [Plaintiff] for its services . . . to Defendant['s] insureds/claimants, to [Plaintiff's] detriment[.]" (*Id.* ¶ 46.) The total amount Plaintiff claims is owed by Defendant is $23,029,619.77. (*Id.* ¶ 1.)

Plaintiff alleges that Defendant is required to pay under the Benefits Clause because "the insureds/claimants designated [Plaintiff] as an assignee of the insurance contracts, as evidenced by providing their insurance information to [Plaintiff], specifically for [Plaintiff] to claim payments from the Defendant[] for the lab tests." (*Id.* ¶ 22.) Plaintiff asserts that "when the insureds/claimants designated [Plaintiff] as an assignee of the insurance contracts, this . . . put [Plaintiff] in privity of contract with the Defendant[] to be paid for the lab tests."[3] (*Id.* ¶ 24.)

**B.    Procedural Background**

On May 22, 2024, Plaintiff filed suit against Defendant in the Superior Court of New Jersey in Mercer County asserting eleven causes of action: (1) breach of contract (Count One); (2) breach of implied covenant of good faith and fair dealing (Count Two); (3) fraudulent misrepresentation (Count Three); (4) negligent misrepresentation (Count Four); (5) promissory estoppel (Count Five); (6) equitable estoppel (Count Six); (7) quantum meruit/unjust enrichment (Count Seven); (8) bad faith (Count Eight); (9) violations of the New Jersey Prompt Payment statute (the "NJPPS") (Count Nine); (10) violations of the New Jersey Consumer Fraud Act (the "NJCFA") (Count Ten); and (11) violations of the Families First Coronavirus Response Act (the "FFCRA") and Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Count Eleven). (*See* Compl. ¶¶ 50-142, ECF No. 1-1.)

---

[3] Plaintiff, however, does not identify individual insureds/claimants, how many are involved, the type of health insurance plans involved, or a specific provision of any plan that entitles the insureds/claimants to benefits from Defendant. (*See generally* Am. Compl.)

Defendant timely removed this case to this Court from the Superior Court of New Jersey on June 28, 2024, invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal 1, ECF No. 1.) On July 12, 2025, Plaintiff filed an Amended Complaint.[4] (ECF No. 7.) On August 12, 2025, Defendant moved to dismiss pursuant to Federal Rule of Civil Procedure[5] 12(b)(6). (ECF No. 8.) Plaintiff opposed (ECF No. 10), and Defendant replied (ECF No. 12). The Motion is now ripe for review.

## II.    **LEGAL STANDARD**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with sufficient particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations with all 'essential factual background [information] . . . the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

---

[4] Plaintiff's alleged facts in its Amended Complaint remain largely the same as those in the original complaint. (*Compare* Am. Compl., *with* Compl.)

[5] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Second, the court must identify and accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    <u>DISCUSSION</u>[6]

Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety. (*See generally* Def.'s Moving Br., ECF No. 8-1.) The Court addresses each argument in turn.

### A.    Breach of Contract (Count One) and Breach of Implied Covenant of Good Faith and Fair Dealing (Count Two)

In Counts One and Two, Plaintiff brings breach of contract and breach of implied covenant of good faith and fair dealing claims against Defendant. (Am. Compl. ¶¶ 51-67.)

---

[6] The Court agrees with and relies on the following opinions—from related cases filed by Plaintiff—issued by the Honorable Georgette Castner, U.S.D.J.: *Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, No. 23-5142, 2024 WL 1928680 (D.N.J. Apr. 30, 2024); *Abira Med. Lab'ys, LLC v. Allied Benefit Sys., LLC*, No. 23-4002, 2024 WL 2746103 (D.N.J. May 29, 2024); *Abira Med. Lab'ys, LLC v. York Ins. Servs. Grp.*, No. 23-3525, 2024 WL 2746101 (D.N.J. May 29, 2024); *Abira Med. Lab'ys, LLC v. Zurich Am. Ins. Co.*, No. 23-3891, 2024 WL 2746102 (D.N.J. May 29, 2024); and *State Farm Mut. Auto.*, 2024 WL 3199835.

### 1.    *Breach of Contract (Count One)*

Defendant argues that Plaintiff's Amended Complaint fails to contain sufficient facts to state a breach of—express or implied—contract claim. (Def.'s Moving Br. 12.) As it pertains to an express contract, Defendant argues that Plaintiff fails to identify any contract, or any specific provision within a contract, that requires Defendant to pay for Plaintiff's services rendered to Defendant's insureds. (*Id.*) Regarding an implied contract, Defendant argues that Plaintiff fails to sufficiently allege a course of conduct that could give rise to a binding contract. (*Id.* at 12-13.)

In opposition, Plaintiff makes two arguments. First, Plaintiff argues that the Amended Complaint adequately alleges that Plaintiff is an "authorized representative" pursuant to 29 C.F.R. § 2560.503-1(b)(4) and that Defendant "failed to pay for the laboratory services rendered in breach of Defendant['s] agreement with the claimants (now represented by [Plaintiff])." (Pl.'s Opp'n Br. 12-13, ECF No. 10; *see also* Am. Compl. ¶ 23 (citing 29 C.F.R. § 2560.503-1(b)(4)).) Second, Plaintiff argues that because Defendant "partially paid several claims," this established "a reasonable expectation by Plaintiff that Defendant would have compensated Plaintiff for services rendered." (Pl.'s Opp'n Br. 15.) Neither argument is sufficient to plausibly state a breach of contract claim.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted). "The elements necessary to form an implied-in-[law] contract are identical to those required for an express agreement," *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987), and the distinction between an express and implied contract rests on the "method[] of contract formation." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004); *see also Wanaque Borough Sewerage Auth. v. Township of W.*

*Milford*, 677 A.2d 747, 752 (N.J. 1996) ("[C]ontracts implied[-]in[-law] are no different than express contracts, although they exhibit a different way or form of expressing assent than through statements or writings.").

When pleading a breach of contract claim, a plaintiff cannot rely on alleged "general obligations" without tying the obligations to a specific contractual provision. *Perry v. Nat'l Credit Union Admin.*, No. 21-1305, 2021 WL 5412592, at *2 (3d Cir. Nov. 19, 2021). Rather, a plaintiff must allege facts sufficient to enable a plausible inference that a contract exists and that it was violated. *Entrailer Corp. v. Unbeatablesale.com, Inc.*, No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (citation omitted)).

### a.    Express Contract

Plaintiff contends that it was designated or assigned as an "authorized representative" by the insureds and that it rendered such services based on those assignments and designations. (Pl.'s Opp'n Br. 12-13.) And "the insurance contracts . . . [contained] [B]enefits Cla[uses] where Defendant [wa]s required to pay for laboratory testing services." (*Id.* at 13.) Plaintiff further contends that laboratory services were rendered, but Defendant failed to pay Plaintiff for those services. (*Id.*)

Here, the Court finds that Plaintiff fails to plausibly allege a breach of contract claim concerning the purported written insurance contracts between the insureds and Defendant. Plaintiff fails to cite specific provisions of the alleged contract, including a provision that entitles it to compensation from Defendant for services it performed. Plaintiff also fails to identify the "insureds" who are the alleged parties to the insurance contracts with Defendant. Although

Plaintiff alleges that it is an "authorized representative" of the insureds, it cites to 29 C.F.R. § 2560.503-1(b)(4) (Am. Compl. ¶ 23, 24, 33), which is an Employee Retirement Income Security Act ("ERISA") regulation, and Plaintiff has not affirmatively pleaded that the insurance contracts at issue are ERISA plans to which this regulation is applicable. Moreover, this Court has held that this "[ERISA] regulation 'is limited to internal appeals,' not civil actions for benefits." *State Farm Mut. Auto.*, 2024 WL 3199835, at *3 (first citing *Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of N.J.*, No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021); and then citing *Cooperman v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-19225, 2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020)). But, even if these contracts were ERISA plans, Plaintiff would still have to identify specific provisions that entitle it to benefits, which Plaintiff has failed to do. *State Farm Mut. Auto.*, 2024 WL 3199835, at *3 (citing *BrainBuilders LLC v. Aetna Life Ins. Co.*, No. 17-3626, 2024 WL 358152, at *7 (D.N.J. Jan. 31, 2024)).

Plaintiff nevertheless contends that it would be unjust to require it to provide contractual provisions, considering it was not furnished a copy of the contract, and that it need not provide the contract provisions at issue because it put Defendant on notice, which is "the underlying goal of the pleading standard in a breach of contract case." (Pl.'s Opp'n Br. at 13-14 (citation omitted).) In one of the many related cases filed by Plaintiff, *Abira Medical Laboratories, LLC v. Allied Benefit Systems, LLC*, this Court accepted this contention and found that Plaintiff pleaded sufficient facts to establish notice. No. 23-4002, 2025 WL 278651, at *3 (D.N.J. Jan. 23, 2025). In that case, however, Plaintiff included a spreadsheet affixed to its complaint that detailed the: (1) patients who were rendered services; (2) date of service; (3) amounts billed for services

rendered; and (4) relevant ascension numbers.[7] *Id.* at *1. This Court found that the information in the attached spreadsheet was sufficient to put defendant on notice. *Id.* at *3. By contrast, here, Plaintiff has not included a spreadsheet detailing patients, services rendered, or any other information, nor did it include the alleged assignment provision. Without such facts, Plaintiff's Amended Complaint, as it currently stands, is insufficient to draw the plausible inference that a contract existed and that it was violated.[8] *See Entrailer*, 2024 WL 1016200, at *4 ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal."). Accordingly, Plaintiff fails to plead sufficient facts to support the existence of an express contract.

b.    **Implied Contract**

Plaintiff next argues that an implied contract exists because of the parties' alleged course of conduct. (*See* Pl.'s Opp'n Br. 14-17.) Specifically, Plaintiff contends that the parties established an implied contract, which is evidenced by Plaintiff's expectation of payment and Defendant's silence, establishing the intent to be bound. (*Id.* at 14-15.) Plaintiff further contends that

---

[7] The complaint also included the specific language of the alleged assignment provisions. *See Allied Benefit Sys., LLC*, 2025 WL 278651, at *3.

[8] Plaintiff also cites an analogous case with the same claim that survived a motion to dismiss. (Pl.'s Opp'n Br. 15-16.) In *Abira Medical Laboratories, LLC v. Kaiser Found. Health Plan of the Mid-Atlantic States*, plaintiff brought claims similar to the instant case against the defendant. *Compare* No. 24-0759, 2024 WL 2188911, at *2 (E.D. Pa. May 15, 2024), *with* (Am. Compl. ¶¶ 51-67, 75-115.) While most of the facts of that case are parallel to the facts in the instant case, in *Kaiser*, the plaintiff attached an exhibit to its complaint including the date, bill amount, and accession numbers for each test it performed. 2024 WL 2188911, at *2. The court denied the defendant's motion to dismiss the breach of contract claim because the plaintiff "provided enough to 'raise a reasonable expectation that discovery w[ould] reveal evidence' regarding a contractual relationship between it and [defendant] in the form of assignments of benefits from [defendant]'s insureds, [defendant]'s payment or nonpayment pursuant to those assignments, and any breach in [defendant]'s failure to pay the full amount it owed." *Id.* at 2-3. The Court declines to use *Kaiser* as persuasive authority because Plaintiff did not provide a spreadsheet detailing the services performed.

Defendant's partial payment of some claims supports the existence of an implied contract. (*Id.* at 15.) Defendant argues that Plaintiff failed to plead sufficient facts to establish the existence of an implied contract because it failed to allege material terms of the contract (i.e., price and duration). (Def.'s Moving Br. 12-13.)

Here, the Court finds Plaintiff's allegations insufficient to adequately raise a claim for breach of an implied contract. Unlike cases where a plaintiff alleges "that an out-of-network provider and an insurer regularly dealt with each other, and the provider would obtain preauthorization," *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *3 (D.N.J. May 19, 2021) (collecting cases), there is no allegation in the Amended Complaint that Plaintiff obtained preauthorization from Defendant for the services rendered (*see generally* Am. Compl.). A preauthorization is typically a critical component to the alleged existence of an implied healthcare contract because "preauthorization from the insurer plausibly manifests to the provider that the insurer will reimburse the provider for the costs of the service." *Allied Benefit Sys., LLC*, 2024 WL 2746103, at *4 (quoting *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *5 (D.N.J. Jan. 12, 2022)); *see also MedWell, LLC*, 2021 WL 2010582, at *3 ("The allegations that [plaintiff] had a regular billing relationship with [defendant] lasting fifteen years, coupled with a pattern of preauthorization, takes the [a]mended [c]omplaint beyond '[m]erely claiming than an implied contract arose "from the course of conduct."'" (citation omitted)).

Without allegations of preauthorization, "Plaintiff's generalized allegation that Defendant paid some claims at some point does not create a plausible basis for the [c]ourt to presume that the parties' 'course of dealing' satisfies the elements for a contract-based claim." *Allied Benefit Sys., LLC*, 2024 WL 2746103, at *4 (citing *Ctr. For Special Procs. v. Conn. Gen. Life Ins. Co.*,

No 09-6566, 2010 WL 5068164, at *6 (D.N.J. Dec. 6, 2010) (dismissing contractual claims where plaintiff alleged that defendant paid "for services [plaintiff] provided to various patients who were . . . insureds or plan members," finding that the allegation did not "allow the [c]ourt . . . to discern the alleged terms of [defendant's] 'promise and/or contract to pay'")). Accordingly, Plaintiff fails to plead sufficient facts to support the existence of an implied contract.

Because Plaintiff fails to plausibly allege the existence of an express or implied contract, the Court dismisses its breach of contract claim (Count One) without prejudice.

### 2.    *Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two)*

Because the Court finds that Plaintiff has not adequately pleaded the existence of a contract or its breach, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed. *Hall v. Revolt Media & TV, LLC*, No. 17-2217, 2018 WL 3201795, at *3 (D.N.J. June 29, 2018) ("Where a plaintiff fails to adequately allege the existence of a contract, plaintiff cannot allege that defendant breached the covenant of good faith and fair dealing."); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law."). Accordingly, Plaintiff's breach of the implied covenant of good faith and fair dealing claim (Count Two) is dismissed without prejudice.

### B.    **Fraudulent (Count Three) and Negligent (Count Four) Misrepresentation**

In Counts Three and Four, Plaintiff asserts fraudulent and negligent misrepresentation claims against Defendant. (Am. Compl. ¶¶ 68-83.)

Plaintiff's fraudulent and negligent misrepresentation claims are based on the same two allegations: (1) "Defendant[] promised the insureds/claimants in the Benefits Clause of the insurance contracts, that they would cover for the insureds/claimants the cost of lab tests for

11

specimens[;]" and (2) "Defendant[] w[as] supposed to pay the claims, pursuant to [Plaintiff]'s fee schedule or . . . [Defendant]'s fee schedule, or typically, negotiate a reasonable fee." (*Id.* ¶¶ 69-70, 76-77.)

Defendant argues that Plaintiff's allegations are insufficient to satisfy the Rule 9(b) pleading standard. (Def.'s Moving Br. 14.) More specifically, Defendant contends that Plaintiff failed to allege specific representations that Defendant made to Plaintiff and, instead, only alleges that Defendant breached clauses of unidentified contracts with unidentified insureds. (*Id.*) Plaintiff counters that it alleges sufficient facts to satisfy the pleading standard because it alleges that it reasonably relied on Defendant's representation (or lack thereof) that it would be compensated for its services, which resulted in damages. (Pl.'s Opp'n Br. 20.) Plaintiff contends that its reliance was reasonable because Defendant previously paid for some of its services. (*Id.*)

To set forth a claim for fraudulent misrepresentation, a plaintiff must adequately allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 85 (N.J. Super. Ct. App. Div. 2012) (quoting *Gennari v. Weichart Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). "Scienter" is a necessary element of a claim for fraudulent misrepresentation under New Jersey law. *See Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981). Thus, a plaintiff must plead with particularity:

> the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, . . . [which] may [be] satisf[ied] through describing the 'date, place or time' of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."

*Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (internal citations omitted) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

Similarly, to plead a claim for negligent misrepresentation, a plaintiff must adequately allege "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations and citation omitted). "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud[ulent misrepresentation]." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000).

Here, the Court finds that Plaintiff fails to allege an actionable misrepresentation made by Defendant. The Amended Complaint contains no factual matter—let alone allegations pled with enough particularity to satisfy Rule 9(b)—to support Plaintiff's allegation that Defendant promised that it would cover the cost of lab tests for specimens. The Amended Complaint fails to identify any claimants/insureds, plans under which these parties were insured, or specific provisions entitling insureds to coverage for "the cost of lab tests for specimens" under any plans. Even further, absent from the Amended Complaint is whether such purported representations were for one specific claimant/insurer or for any and all claimants or insureds who might use Plaintiff's services.

Plaintiff's conclusory allegation that "Defendant . . . w[as] supposed to pay the claims, pursuant to [Plaintiff]'s fee schedule or . . . [Defendant]'s fee schedule, or typically, negotiate a reasonable fee," is likewise insufficient to withstand Defendant's Motion to Dismiss. (Am. Compl. ¶¶ 69-70, 76-77.) Plaintiff fails to identify its own or Defendant's fee schedule, or provide sufficient facts to suggest that the parties negotiated a reasonable fee. *See U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 307 (providing examples of specific information that met the Rule 9(b)

standard). Such vague allegations are insufficient to survive a motion to dismiss. *See, e.g.*, *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 360 (D.N.J. 2021) (dismissing fraudulent and negligent misrepresentation claims where the pleading did not go "beyond generalities"). Accordingly, the Court finds that Plaintiff fails to state claims for fraudulent and negligent misrepresentation.

The Court, therefore, dismisses Plaintiff's fraudulent (Count Three) and negligent (Count Four) misrepresentation claims without prejudice.[9]

### C.    Promissory (Count Five) and Equitable Estoppel (Count Six)[10]

In Counts Five and Six, Plaintiff asserts claims for promissory and equitable estoppel against Defendant. (Am. Compl. ¶¶ 84-103.)

Similar to Plaintiff's misrepresentation claims, Plaintiff's estoppel claims (Counts Five and Six) are based on Defendant's purported representations that Defendant would compensate Plaintiff for its services, which it relied on, and that Plaintiff's reliance was reasonable because Defendant had paid it for its previous claims. (Pl.'s Opp'n Br. 22.)

To state a claim for promissory estoppel in New Jersey, a plaintiff must adequately allege "four elements: (1) a clear and definite promise; (2) made with the expectation that the [plaintiff] will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros. Inc. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008) (citation omitted). "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from

---

[9] Defendant contends that, if Count One is not dismissed, the economic loss doctrine bars Counts Three and Four. (Def.'s Moving Br. 15.) Since Count One is dismissed, Defendant's argument is moot.

[10] There seems to be a question "as to whether New Jersey courts recognize a claim of equitable estoppel as an independent cause of action." *D'Urso v. BAMCO, Inc.*, No. 22-3723, 2023 WL 5623945, at *10 (D.N.J. Aug. 31, 2023) (collecting cases). The Court, however, addresses Plaintiff's claims without resolving this conflict—if such a conflict exists at all.

other conduct." *Wanaque Borough Sewerage Auth.*, 677 A.2d at 752 (quoting Restatement (Second) of Contracts § 5 cmt. a (1979)). A plaintiff's "general expectation" of a benefit, however, is insufficient to give rise to a cause of action for promissory estoppel. *Doe v. Princeton Univ.*, 790 F. App'x 379, 386 (3d Cir. 2019) (citing *E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp.*, 963 A.2d 865, 874-74 (N.J. Super. Ct. App. Div. 2009)).

Here, the Court finds that Plaintiff fails to allege a sufficiently clear and definite promise that Defendant made to it regarding the payments for its services. Plaintiff argues that it has sufficiently stated a promissory estoppel claim because the Amended Complaint contains allegations that Defendant "process[ed] and/or ma[de] payment[,]" (Am. Compl. ¶ 87), in the past for its services, which purportedly establishes a course of conduct (*see* Pl.'s Opp'n Br. 22). Plaintiff also alleges that "Defendant[] confirmed to [Plaintiff] that it would continue to honor the claims as valid." (Am. Compl. ¶ 87.) These allegations, however, simply do no more than state Plaintiff's "general expectation" of a benefit. *See Bergen Beverage Distributs. LLC v. E. Distributs. I, Inc.*, No. 17-4735, 2017 WL 5714702, at *3 (D.N.J. Nov. 28, 2017) (explaining that a plaintiff must show the specific promise defendant made to plaintiff). Such vague allegations of Plaintiff's "general expectation" of payment are insufficient to establish a promissory estoppel claim. *See, e.g.*, *Genesis Lab'y Mgmt. LLC v. United HealthCare Servs., Inc.*, No. 21-12057, 2025 WL 325840, at *7 (D.N.J. Jan. 29, 2025) (explaining that allegations that a defendant paid for claims in the past alone are insufficient to establish that a defendant agreed to cover services on a different occasion through the parties' course of conduct); *see also MHA, LLC*, 539 F. Supp. 3d at 360 (dismissing promissory and equitable estoppel claims where the complaint did not go "beyond generalities" and failed to identify a speaker or specific communication).

15

Accordingly, the Court dismisses Plaintiff's claims for promissory (Count Five) and equitable (Count Six) estoppel without prejudice.

### D.    Quantum Meruit/Unjust Enrichment (Count Seven)[11]

In Count Seven, Plaintiff asserts a claim for quantum meruit/unjust enrichment against Defendant. (Am. Compl. ¶¶ 104-15.)

Defendant argues that Plaintiff conferred no benefit on Defendant, and only the *insureds* did by paying insurance premiums. (Def.'s Moving Br. 18.) Defendant contends that Plaintiff cannot argue that the discharge of obligations was a benefit conferred to Defendant because Plaintiff has not sufficiently alleged that insurance plans under which the obligations arose exist. (*Id.*) Plaintiff disagrees. (Pl.'s Opp'n Br. 23-24.) Plaintiff argues that Defendant was unjustly enriched because insureds received Plaintiff's services under Defendant's insurance plans, and Defendant did not pay for the services. (*Id.* at 24.)

To succeed on an unjust enrichment claim under New Jersey law, a plaintiff must prove "(1) that the defendant . . . received a benefit from the plaintiff[;] and (2) that the retention of the benefit by the defendant is inequitable." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth.*, 677 A.2d at 753). Put simply, claims for quantum meruit and unjust enrichment "require[] a determination that defendant has benefitted from plaintiff's performance." *MHA*, 539 F. Supp. 3d at 361 (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017)). While district courts in this

---

[11] "New Jersey courts have treated [unjust enrichment and quantum meruit] as parallel, and generally have held that quantum meruit require[s] a benefit conferred, even if that benefit may take the form of services." *MedWell, LLC*, 2021 WL 2010582, at *9; *id.* at *4 ("Without venturing into the differences between the two, suffice to say that '[r]ecovery under both of these doctrines requires a determination that defendant has benefitted from plaintiff's performance.'" (citation omitted)); *see also Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017).

Circuit, applying New Jersey law, have long held that benefits for medical services "inure[d] only to the patients treated," not the insurers, *MHA, LLC*, 539 F. Supp. 3d at 361,[12] "at least one court in this District has interpreted the Third Circuit's opinion in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.* as opening the door for unjust enrichment claims against insurers." *York Ins. Servs. Grp.*, 2024 WL 2746101, at *5 (citing *MHA, LLC*, 539 F. Supp. 3d at 361).

In *Plastic Surgery Center*, the Third Circuit explained that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." 967 F.3d at 240. And because the obligation the insurer owes typically springs from a plan, the health provider must plausibly establish that a plan exists, the insurer "'received a benefit'—i.e., the discharge of its duties under that plan," and that "retention of that benefit without payment would be unjust." *Id.* at 241 (citations omitted).

Here, even assuming that an unjust enrichment claim could be maintained against Defendant, the Court finds that Plaintiff fails to allege that it conferred a benefit on Defendant. Plaintiff's allegations fail to plausibly establish the existence of a plan under which Defendant "received a benefit." That is, the Amended Complaint does not identify insureds, does not identify what duties Defendant owed to the insureds under the specific terms of any plan, and does not adequately plead allegations that allow this Court to infer that Defendant unjustly retained a benefit under any plan without payment. *See Genesis Lab'y Mgmt. LLC*, 2025 WL 325840, at *6 (explaining that a plaintiff need not plead specific plan provisions for ERISA-claims, but for

---

[12] *See, e.g., Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, No. 18-2608, 2019 WL 4750010, at *6 (D.N.J. Sept. 30, 2019) ("[T]his Court 'consistently' dismisses unjust enrichment claims when a healthcare provider sues an insurer for the unreimbursed costs of a procedure performed on an insured." (citation omitted)).

non-ERISA plans, a plaintiff must plead duties owed to the insureds under the non-ERISA plans); *but see Allied Benefit Sys., LLC*, 2025 WL 278651, at *5 (denying motion to dismiss unjust enrichment claim because plaintiff identified insureds, the amount due for services rendered to each insured, the date of services rendered, and the specific language of the assignment contracts with insureds).

Accordingly, the Court dismisses Plaintiff's quantum meruit/unjust enrichment claim (Count Seven) without prejudice.

### E.    Bad Faith (Count Eight)

In Count Eight, Plaintiff asserts a bad faith claim against Defendant. (Am. Compl. ¶¶ 116-22.)

To allege bad faith in the insurance context under New Jersey law, a plaintiff must allege facts to plausibly suggest that the insurer: (1) did not have a "fairly debatable" reason for its failure to pay the claim; and (2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004) (citing *Pickett v. Lloyds*, 621 A.2d 445, 454 (N.J. 1993)). "If a claim is 'fairly debatable,' no liability in tort will arise." *Pickett*, 621 A.2d at 453 (quoting *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980)).

To meet the "fairly debatable" standard, a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so is not entitled to assert

a claim for bad faith—including at the motion to dismiss stage.[13] *See Fuscerello v. Combined Ins. Grp., Ltd.*, No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing plaintiff's bad faith claim on a motion to dismiss where insurer's reason for refusing to pay presented disputed issues of material fact); *Ketzner*, 118 F. App'x at 599 (stating that "if there are material issues of disputed fact . . . an insured cannot maintain a cause of action for bad faith" (citation omitted)). As such, "when there are material issues of disputed fact" that "preclude summary judgment as a matter of law, an insured cannot maintain a bad faith claim." *Healthquest of Cent. Jersey, LLC v. Antares AUL Syndicate 1274*, No. 18-12375, 2020 WL 4431770, at *10 (D.N.J. June 31, 2020) (quoting *Ketzner*, 118 F. App'x at 599).

Defendant contends that Plaintiff fails to establish that, as a matter of law, it is entitled to summary judgment on the underlying contract dispute. (Def.'s Moving Br. 19-21.) In support of this contention, Defendant argues that Plaintiff's allegations regarding the underlying breach of contract claim are conclusory and insufficient to establish that Defendant lacked reasons for denying the claims. (*Id.* at 20.) In opposition, Plaintiff argues generally that it "has pleaded intentional bad faith on Defendant's part as it denied claims without a reasonable basis for the denial." (Pl.'s Opp'n Br. 25.)

---

[13] To adequately plead a claim of bad faith, Plaintiff must first establish that it is entitled to summary judgment on the underlying contract dispute in Count One—that is, that Defendant's reasons for denying Plaintiff's claim are *not* debatable as a matter of law. *See Pickett*, 621 A.2d at 453-54. In other words, the "fairly debatable" standard for bad faith claims requires only that the Court identify the existence of material issues of disputed fact in the underlying contract dispute. Although the Court recognizes that the *Pickett* standard presents unique difficulties for bad faith claims at the motion to dismiss stage, *see Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401-02 (D.N.J. 2000) (doubting "the wisdom" of the *Pickett* standard), the Court is nevertheless compelled to apply the substantive law of New Jersey as determined by the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 68 (1938).

Here, the Court finds that Plaintiff fails to meet its burden to adequately allege a bad faith claim. In the Amended Complaint, Plaintiff alleges in a conclusory fashion that Defendant failed to respond and refused to pay for Plaintiff's insurance claims "for reasons that were (and remain) entirely groundless having no debatable reasons for denial." (Am. Compl. ¶ 118.) Simply vaguely alleging that Defendant acted in bad faith by refusing payment is insufficient to withstand a motion to dismiss. *Snowden v. Standard Ins.*, No. 23-2493, 2024 WL 1154471, at *3 (D.N.J. Mar. 18, 2024) (dismissing bad faith claim where plaintiff alleged that defendant acted in bad faith "because [defendant] sought to avoid payment and reduce the impact on [d]efendant's financial situation" (citation omitted)). Without more, Plaintiff's conclusory allegations are insufficient to establish, as a matter of law, that Defendant lacked a fairly debatable reason for its failure to pay Plaintiff's claims. *Id.* at 3-4.

As such, because Plaintiff's Amended Complaint fails to show that Defendant's reasons for denying Plaintiff's claims are not fairly debatable as a matter of law, the Court finds that Plaintiff fails to sufficiently allege a bad faith claim. The Court, therefore, dismisses Plaintiff's bad faith claim (Count Eight) without prejudice.

### F.    NJPPS (Count Nine)

In Count Nine, Plaintiff brings a claim under the NJPPS, N.J. Stat. Ann. 17B:27-44.2 ("HCAPPA"), and its promulgating regulations, N.J.A.C. 11:22-1.1 to -1.16 (the "HINT Act") (Am. Compl. ¶¶ 123-29.)

Courts in this District have found that neither HCAPPA nor the HINT Act creates a private right of action. *See Genesis Lab'y Mgmt. LLC*, 2025 WL 325840, at *7 (concluding that there is no private right of action under HCAPPA and the HINT Act); *see also MHA*, 539 F. Supp. 3d at 358 (concluding that "a private right of action is unnecessary to accomplish [HCAPPA]'s purpose" because "the [New Jersey] Legislature's creation of a detailed and specific arbitration mechanism

clarifies its intention that disputes be resolved by arbitration, not litigation"). Accordingly, the Court dismisses Plaintiff's claims under HCAPPA and the HINT Act with prejudice.

### G. NJCFA (Count Ten)

In Count Ten, Plaintiff asserts a claim for violations of the NJCFA against Defendant. (Am. Compl. ¶¶ 130-37.)

The NJCFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 593 (D.N.J. 2016) (citation omitted). To establish a cause of action under the NJCFA, a consumer must plead that: (1) the defendant engaged in an unlawful practice; (2) the plaintiff suffered an ascertainable loss; and (3) there is a causal relationship between the unlawful conduct and the ascertainable loss. *Veyhl v. State Farm Fire & Cas. Co.*, No. 21-10112, 2021 WL 6062304, at *4 (D.N.J. Dec. 22, 2021) (citing *Frederico*, 507 F.3d at 202-03).

It is well established that the "payment of insurance benefits is not subject to the [NJCFA]." *Veyhl*, 2021 WL 6062304, at *4 (citation omitted). Accordingly, insurance claims brought under the NJCFA must be distinguished as those that allege fraudulent performance, which are covered under the statute, and those that allege refusal to pay benefits, which are not covered. *Smith v. State Farm Fire & Cas. Co.*, No. 19-10319, 2020 WL 6938432, at *8 (D.N.J. Nov. 25, 2020); *compare Alpizar-Fallas v. Favero*, 908 F.3d 910, 918 (3d Cir. 2018) (applying NJCFA to insured's claim that defendant had represented that insured had to sign a document to facilitate approval of claims, but the document was a waiver of claims) *and Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007) (applying NJCFA to insured's claim that defendant engaged in the unlawful practice of discontinuing previously authorized benefit payments), *with Jones-Singleton v. Ill. Mut. Life Ins. Co.*, No. 19-14220, 2020 WL 1243910, at *7 (D.N.J. Mar 13, 2020) (declining to apply NJCFA to insured's claim that defendant failed to promptly pay insurance benefits). NJCFA

claims are subjected to a heightened pleading standard under Rule 9(b). *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (applying Rule 9(b) to NJCFA claims based on misrepresentations); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (affirming dismissal of NJCFA claim because plaintiff failed to identify the *speaker* of the alleged misleading statements or facts).

Here, Plaintiff alleges that Defendant "unconscionably refused and failed to compensate Plaintiff[.]" (Am. Compl. ¶ 136.) Plaintiff's allegation falls squarely within the scope of claims for refusal to pay benefits and is, therefore, not covered under NJCFA. *See Jones-Singleton*, 2020 WL 1243910, at *7. Although Plaintiff alleges that Defendant made misrepresentations that it would pay for the services that Plaintiff provided, knowing that it could/would not pay for them, which was deceptive, fraudulent, and unconscionable (Am. Compl. ¶¶ 133-34), Plaintiff fails to identify the speaker of the allegedly misleading statements, where they were made, when they were made, and how they were misleading. Rather, Plaintiff makes conclusory allegations of deception, fraud, and unconscionability, which are insufficient to state a claim under NJCFA. Accordingly, the Court dismisses Plaintiff's NJCFA claim (Count Nine) without prejudice.[14]

## H.    Violation of the FFCRA and CARES Act (Count Eleven)

In Count Eleven, Plaintiff asserts a claim for violation of the FFCRA and CARES Act against Defendant. (Am. Compl. ¶¶ 138-4.)

Courts, including in this District, have held that neither statute creates a private cause of action against an insurer. *See, e.g., Thompson v. U.S. Dep't of Treasury Internal Revenue Serv.*, No. 23-3103, 2023 WL 4744751, at *2 (D.N.J. July 25, 2023) ("Courts in this district, as well as

---

[14] Because the Court dismisses Plaintiff's NJCFA claim, the Court declines to address Plaintiff's other arguments as they relate to Plaintiff's NJCFA claim. (*See* Pl.'s Opp'n Br. 27 (arguing that Plaintiff has standing to assert NJCFA claims by way of assignment); *id.* at 28-29 (arguing that NJCFA is sufficiently broad to cover Plaintiff's allegations).)

the other districts around the country, agree that there is no implied private right of action for individuals under the CARES Act."); *Genesis Lab'y Mgmt. LLC v. United Health Grp., Inc.*, No. 21-12057, 2023 WL 2387400, at *3 (D.N.J. Mar. 6, 2023) ("[T]he Court, in line with its sister courts, finds that [p]laintiff has no implied private right of action under the FFCRA and the CARES Act."); *see also Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023) ("We therefore hold that the CARES Act does not grant a private right of action to a provider of COVID-19 diagnostic testing to enforce § 3202."). Accordingly, the Court dismisses Plaintiff's claims for violation of the FFCRA and CARES Act (Count Eleven) with prejudice.

**I.        ERISA Preemption**

Defendant contends that ERISA preempts Plaintiff's state law claims for ERISA-governed health plans. (Def.'s Moving Br. 6-9.) Plaintiff counters that its state law claims do not refer to ERISA plans and, thus, are not subject to ERISA preemption. (Pl.'s Opp'n Br. 11.) Because the Court dismisses the Amended Complaint on other grounds, the Court declines to address this issue at this juncture. *See Nat'l Ass'n of Letter Carriers Health Benefit Plan*, 2024 WL 1928680, at *5 (addressing the issue where Plaintiff has alleged ERISA violations in their complaint).

**IV.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**