**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS, | |
| Plaintiff, | Civil Action No. 24-7375 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| UNITED HEALTHCARE SERVICES, INC., *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant United HealthCare Services, Inc.'s ("Defendant") Motion to Dismiss (ECF No. 20) Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostic's ("Plaintiff") Second Amended Complaint (ECF No. 16). Plaintiff opposed (ECF No. 23), and Defendant replied (ECF No. 24). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff is a New Jersey limited liability company that "perform[s] clinical laboratory, pharmacy, genetics, additional rehabilitation, and COVID-19 testing services on specimens submitted by medical service providers" (the "Laboratory Testing Services"). (Second Am.

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Compl. ("SAC") ¶¶ 6, 12, ECF No. 16.) Defendant "provides health insurance throughout the

United States" and has its principal place of business in Edina, Minnesota. (*Id.* ¶ 7.) At all relevant

times, Plaintiff was "an out-of-network provider of laboratory testing services to Defendant's

subscribers/members." (*Id.* ¶ 6.) Plaintiff alleges that "requisitions of laboratory testing services

that were submitted on behalf of Defendant's insureds contained an assignment of benefits, which

created contractual obligations on part of . . . Defendant to pay for the Laboratory Testing Services"

that Plaintiff provided. (*Id.* ¶ 13.) Specifically, the assignments executed by Defendant's insured

included the following:

> I hereby assign all rights and benefits under my health plan
> and direct payments be made to Genesis Diagnostics for laboratory
> services furnished to me by Genesis Diagnostics. I irrevocably
> designate[,] authorize[,] and appoint Genesis Diagnostics or its
> assigned affiliates as my true and lawful attorney-in-fact for the
> purpose of submitting my claims and pursuing any request,
> disclosure, appeal, litigation[,] or other remedies in accordance with
> the benefits and rights under my health plan and in accordance with
> any federal or state laws.
>     Or
> I hereby authorize my insurance benefits to be paid directly
> to Genesis for services I received.
>     Or
> By signing this authorization, I am acknowledging that
> payment(s) be made on my behalf to Genesis Diagnostics, Inc. for
> any services provided to me by Genesis Diagnostics, Inc. I also
> allow the release of any medical information necessary to process
> this claim.

(*Id.* ¶ 14.) Plaintiff attached to its Second Amended Complaint a "spreadsheet setting forth the

patients who were rendered Laboratory Testing Services" ("Exhibit 1") who "executed or should

have executed an assignment of benefits with respect to their original requisitions for services[.]"

(*Id.* ¶ 15.) Plaintiff claims that through these assignments of benefits, "contractual obligations

arose between the Plaintiff and Defendant with respect to each of the patients" identified in Exhibit

1. (*Id.* ¶ 16.) Plaintiff alleges that Defendant, however, "improperly refused to pay (or underpaid)

Plaintiff millions of dollars for services it rendered to numerous of Defendant's subscribers and/or members for numerous pretextual reasons" as part of "a long campaign designed to deprive Plaintiff of millions of dollars it is rightfully owed[.]" (*Id.* ¶¶ 4, 17.)

### B.    Procedural Background

In June 2024, Plaintiff initially brought this case in the Superior Court of New Jersey, Mercer County, and Defendant removed the case to this Court. (*See generally* Notice of Removal, ECF No. 1.) Plaintiff filed an Amended Complaint in July 2024. (*See generally* Am. Compl., ECF No. 7.) Defendant moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure[2] 12(b)(6). (Def.'s Mot. to Dismiss, ECF No. 8.) The Court granted Defendant's Motion to Dismiss the Amended Complaint, dismissing with prejudice two of the counts and dismissing without prejudice the remaining nine counts. (Order, ECF No. 15.) The Court gave Plaintiff an opportunity to file a second amended complaint. (*Id.*) On April 30, 2025, Plaintiff filed its Second Amended Complaint alleging four causes of action: (1) a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* ("Count One"); (2) breach of contract ("Count Two"); (3) breach of implied covenant of good faith and fair dealing ("Count Three"); and (4) quantum meruit or unjust enrichment ("Count Four"). (*See generally* SAC.) Defendant now moves to dismiss the Second Amended Complaint for two reasons: (1) Plaintiff failed to allege it exhausted administrative remedies before bringing its ERISA claim; and (2) Plaintiff fails to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br., ECF No. 20-1.) In the alternative, if the Court does not dismiss the Second Amended Complaint in its

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

entirety, Defendant asks the Court for staged discovery focusing on anti-assignment provisions. (*Id.* at 15-16.)

## II.    <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

III.  **DISCUSSION**

The Court finds that: (1) dismissal of Plaintiff's ERISA claim for failure to exhaust administrative remedies is not warranted; but (2) Plaintiff otherwise fails to state a claim upon which relief can be granted. The Court addresses each finding in turn.

A.  **ERISA Claim (Count One)**

Plaintiff, for the first time in its Second Amended Complaint, alleges an ERISA claim against Defendant. (*See* SAC ¶¶ 20-32.) Defendant argues that this claim should be dismissed because: (1) Plaintiff fails to allege that it exhausted administrative remedies, a requirement before seeking judicial relief under an ERISA plan; and (2) Plaintiff otherwise fails to allege sufficient facts to state an ERISA claim. (Def.'s Moving Br. 6-8.)

1.  *Exhaustion of Administrative Remedies*

Before seeking to enforce terms of an ERISA plan, a party must either "exhaust [its] administrative remedies" or establish that it need not have exhausted its administrative remedies because "it would be futile to do so." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). The Third Circuit has explained that "[c]ourts require exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" *Harrow*, 279 F.3d at 249 (citation omitted). "The requirement that a plaintiff have exhausted administrative remedies[, however,] does not seem to embody any particular standard of pleading. Rather, it is ordinarily addressed with the aid of evidence adduced in discovery, typically on a motion for summary judgment." *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 524 (D.N.J. 2013)

(citation omitted). "[W]here '[i]t cannot be conclusively established from the complaint whether [the plaintiff] failed to adequately pursue [his] administrative remedies or whether it would have been futile for him to have done so,' dismissal is not appropriate." *Abramson v. Aetna Life Ins. Co.*, No. 22-5092, 2023 WL 3199198, at *10 (D.N.J. May 2, 2023) (alterations in original) (quoting *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015)).

Here, Plaintiff alleges in its Second Amended Complaint that it "properly submitt[ed] claims for payment to the Defendant[] and exhaust[ed] administrative remedies." (SAC ¶ 27.) While Defendant is right that this is just a "single, conclusory reference to exhaustion" (*see* Def.'s Moving Br. 6), Defendant has the burden of proving Plaintiff's failure to exhaust. *Abramson*, 2023 WL 3199198, at *10 ("Because 'exhaustion of remedies' is considered an affirmative defense, the defendant bears the burden of proving a failure to exhaust." (citing *Rizzo v. First Reliance Std. Life Ins. Co.*, 417 F. Supp. 3d 479, 485-86 (D.N.J. Oct. 23, 2019)). Because Plaintiff's Second Amended Complaint contains at least one allegation that Plaintiff exhausted its administrative remedies, the Court cannot conclusively establish that Plaintiff failed to exhaust its administrative remedies based on the allegations, and Defendant has not otherwise met its burden of proving Plaintiff's failure to exhaust at this stage. The Court, accordingly, will not grant Defendant's motion on grounds of failure to plead with specificity the exhaustion of remedies. *See, e.g.*, *NJSR Surgical Ctr.*, 979 F. Supp. 2d at 524-25 (denying motion to dismiss for failure to plead exhaustion or futility but noting that since the "[p]laintiffs will no doubt be submitting an amended complaint, they may wish to take the opportunity to plead these matters more specifically").

    **2.**    ***Failure to State an ERISA Claim***

    "A claim for ERISA benefits 'stands and falls by the terms of the plan.'" *Abramson*, 2023 WL 3199198, at \*10 (quoting *Atl. Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at \*7 (D.N.J. Oct. 31, 2018)). A plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). To state a claim for relief, a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) (citing 29 U.S.C. § 1132(a)(1)(B)). "In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan for which a court can infer this legally enforceable right." *Metro. Neurosurgery v. Aetna Life Ins. Co.*, No. 22-83, 2024 WL 4345287, at \*5 (D.N.J. Sept. 30, 2024) (collecting cases). "A vague pleading that benefits are due[, therefore,] is not sufficient" and courts in this District "have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan." *Id.* (quoting *K.S. v. Thales USA, Inc.*, No. 17-7489, 2019 WL 1895064, at \*6 (D.N.J. Apr. 29, 2019)).

    Here, Plaintiff alleges that "Defendant['s] subscribers/members/insureds obtain insurance policies through the issuance of the Defendant['s] insureds/subscribers/member's [e]mployer" and that "[s]aid policy is an employee benefit plan that is regulated by" ERISA. (SAC ¶¶ 22, 23.) Plaintiff further alleges that, through an assignment of benefits by a plan participant, Plaintiff was transferred "the insured's right to payment under a plan and/or his right to sue for that payment." (*Id.* ¶ 24.) Plaintiff claims, however, that "[d]uring the claim administration process, Plaintiff is not provided a copy or access to the plan . . . [and h]ence, Plaintiff is not able to differentiate

between those plans that are subject to ERISA and/or detail[] the underlying terms of said plan or policy," but that Plaintiff "continues to be eligible for benefits under said policy or plan[.]" (*Id.* ¶¶ 25, 30.) Notably, as Defendant points out, "[t]he Second Amended Complaint does not identify *any* ERISA plan or cite any plan language entitling [Plaintiff] to benefits." (Def.'s Moving Br. 7 (emphasis added); *see generally* SAC.) Plaintiff argues that since it was not "provided plan documents in order to determine whether the underlying reimbursement claim is subject to ERISA" during the claim administration process, "this [C]ourt should deny Defendant's demand for Plaintiff to satisfy an excessive pleading burden." (Pl.'s Opp'n Br. 9-10, ECF No. 23.)

The Court finds that Plaintiff has failed to state a claim for relief under ERISA. Plaintiff admits it does not even know if certain claims are subject to ERISA plans and provides no allegations on information and belief regarding any provision of any plan for which it alleges it is entitled to relief. (*See id.*; *see generally* SAC.) Plaintiff's vague pleading that benefits are due does not satisfy its burden here. *See Metro. Neurosurgery*, 2024 WL 4345287, at *5. Defendant's Motion to Dismiss Count One is, accordingly, granted. *See, e.g.*, *Emami v. Cmty. Ins. Co.*, No. 19-21061, 2021 WL 4150254, at *5 (D.N.J. Sept. 13, 2021) (granting motion to dismiss ERISA claim where "[t]he [c]omplaint does not point to a specific provision within the ERISA [p]lan"); *Metro. Neurosurgery*, 2024 WL 4345287, at *6 (granting motion to dismiss ERISA claim where the "[second amended complaint] does not point to any [p]lan provision from which the [c]ourt can infer that [p]laintiff was entitled to the amount of reimbursement demanded for the out-of-network emergency medical services provided"); *K.S.*, 2019 WL 1895064, at *6 ("[T]he [a]mended [c]omplaint fails entirely to specify which portion of the [plan at issue] the alleged underpayment violated, and absent such an allegation, the [a]mended [c]omplaint cannot withstand [d]efendants' [m]otion to [d]ismiss.").

### B.    Breach of Contract (Count Two)

Plaintiff's breach of contract claim was previously dismissed by this Court because Plaintiff, among other deficiencies, "fail[ed] to cite specific provisions of the alleged contract, including a provision that entitles it to compensation from Defendant for services it performed. Plaintiff also fail[ed] to identify the 'insureds' who are the alleged parties to the insurance contracts with Defendant." (Mem. Op. 7, ECF No. 14.) In its Second Amended Complaint, Plaintiff attaches Exhibit 1, which contains a lengthy list of insureds who "executed or should have executed an assignment" to Plaintiff. (*See* Ex. 1 to SAC, ECF No. 16-1; SAC ¶ 15.) Exhibit 1 also includes accession numbers, dates of service, charges, and policy numbers. (*See* Ex. 1 to SAC.) Plaintiff also alleges that: "the contractual obligations which arose between Plaintiff and Defendant[] via the assignments of benefits . . . , constitute a valid and binding contract(s)" (SAC ¶ 34); it is "entitled to have its claims for services rendered to Defendant['s] subscribers/member[s]/insureds . . . processed and paid promptly by Defendant[]" (*id.* ¶ 37); and Defendant breached "the [c]ontract by either failing to respond at all to properly submitted claims or, for those claims in which Defendant[] did choose to respond, regularly refusing to pay and/or underpaying claims submitted" (*id.* ¶ 38). Plaintiff, however, does not otherwise allege any facts regarding the underlying contractual provision(s) allegedly transferred via assignment that provide for payment of Plaintiff's services by Defendant. (*See generally id.*)

Under New Jersey law, a breach of contract claim requires four elements: (1) "the parties entered into a contract containing certain terms;" (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). "The distinction between express and implied

contracts rests on alternative methods of contract formation." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004); *see also Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) ("The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement."). When pleading a breach of contract claim, a plaintiff cannot rely on alleged "general obligation[s]" without tying the obligations to a specific contractual provision or requirement. *Perry v. Nat'l Credit Union Admin.*, No. 21-1305, 2021 WL 5412592, at *2 (3d Cir. 2021). Instead, a plaintiff must allege facts sufficient to establish a plausible inference that a contract exists and that it was violated. *Etrailer Corp. v. Unbeatable.com, Inc.*, No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (second alteration in original) (citation omitted)).

Here, Defendant argues that "[Plaintiff's] inclusion of a disputed-claims list as an exhibit . . . may have cured its failure to identify the specific services [Plaintiff] allegedly rendered . . . , [b]ut the Second Amended Complaint is entirely devoid of any factual allegations supporting [Plaintiff's] conclusory allegation that [Defendant] is contractually obligated to pay for those services." (Def.'s Moving Br. 11.) This Court agrees. Plaintiff's conclusory allegations that Defendant "blatantly disregarded, among other of its duties, express obligations to pay Plaintiff for services requested and rendered" and "Plaintiff was . . . entitled to have its claims for services rendered . . . processed and paid promptly by Defendant[]" do not adequately allege the existence of specific contract terms that obligate Defendant to pay for the Laboratory Testing Services in the first instance. (*See* SAC ¶¶ 16, 37.) Substantive rights are not created simply because the benefits of a health care contract were assigned to a third party. *See, e.g., Abira Med. Lab'ys, LLC v. Mut.*

*Of Omaha Ins. Co.*, No. 24-194, 2024 WL 4056573, at *9 (D. Neb. Sep. 5, 2024) ("[T]he assignments did not create contractual obligations on the part of [defendant] to pay for the Laboratory Testing Services that were provided by [plaintiff] to [defendant's] insured, members, or subscribers . . . unless the insurance policies required . . . pay[ment] for such services."). Although Plaintiff may not have access to the contracts it alleges are breached, it still must do more than assert that there are "general obligation[s]" that Defendant has to Plaintiff through some assignments from the list of insureds noted in Exhibit 1. S*ee Perry*, 2021 WL 5412592, at *2. Without more, Plaintiff once again fails to plead sufficient facts regarding the terms of the underlying contract that entitle it to payment for the Laboratory Testing Services.[3] (*See* Mem. Op. 7.) The Court, accordingly, grants Defendant's Motion to Dismiss Count Two.[4]

---

[3] Plaintiff also argues that it has pleaded facts to establish breach of an implied contract because "Plaintiff provided services to Defendant's insureds under circumstances in which Plaintiff clearly expected payment and acted accordingly, [and] the law implies an obligation to pay the reasonable value of the services." (Pl.'s Opp'n Br. 13-14.) As this Court previously noted, "[a] preauthorization is typically a critical component to the alleged existence of an implied healthcare contract because 'preauthorization from the insurer plausibly manifests to the provider that the insurer will reimburse the provider for the costs of the service.'" (Mem. Op. 10 (quoting *Abira Med. Lab'ys, LLC v. Allied Benefit Sys., LLC*, No. 23-4002, 2024 WL 2746103, at *4 (D.N.J. May 29, 2024)).) Plaintiff does not allege facts regarding preauthorization, and, as such "Plaintiff's generalized allegation that Defendant paid some claims at some point does not create a plausible basis for the Court to presume that the parties' 'course of dealing' satisfied the elements for a contract-based claim." (*Id.* (quotation omitted).) Accordingly, Plaintiff likewise fails to plead sufficient facts to support the existence of an implied contract. *See Ctr. for Special Procs. v. Conn. Gen. Life Ins. Co.*, No. 09-6566, 2010 WL 5068164, at *6 (D.N.J. Dec. 6, 2010) (dismissing breach of implied contract claim where plaintiff alleged defendant paid "for services it provided to various patients who were [d]efendants' insured or plan members" because the allegations did not "allow the [c]ourt . . . to discern the alleged terms of [d]efendants' 'promise and/or contract to pay'")).

[4] The Court recognizes that some of Plaintiff's similar claims in other cases have been permitted to move forward in front of this Court. *See, e.g.*, *Abira Med. Lab'ys, LLC v. Allied Benefit Sys., LLC*, No. 23-4002, 2025 WL 278651 (D.N.J. Jan. 23, 2025); *Abira Med. Lab'ys, LLC v. Nat'l Assoc. of Letter Carriers Health Benefit Plan*, No. 23-5142, 2025 WL 278658 (D.N.J. Jan. 23, 2025). Here, however, the Court is not satisfied that Plaintiff has pleaded a claim of breach of express or implied contract for the reasons discussed herein.

### C.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count Three)

Because the Court finds that Plaintiff has not adequately pleaded the existence of a contract or a breach of certain terms, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed. *See Hall v. Revolt Media & TV, LLC*, No. 17-2217, 2018 WL 3201795, at *3 (D.N.J. June 29, 2018) ("Where a plaintiff fails to adequately allege the existence of a contract, plaintiff cannot allege that defendant breached the covenant of good faith and fair dealing." (citation omitted)); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, the contention finds no support in our case law."). Defendant's Motion to Dismiss Count Three is, accordingly, granted.

### D.    Quantum Meruit / Unjust Enrichment (Count Four)

Plaintiff's quantum meruit/unjust enrichment claim was previously dismissed by this Court because "Plaintiff fail[ed] to allege that it conferred a benefit on Defendant." (Mem. Op. 17.) In its Second Amended Complaint, Plaintiff alleges that "[i]n performing Laboratory Testing Services for Defendant's insureds, subscribers[,] and/or members . . . , Plaintiff conferred a benefit upon Defendant's insureds/subscribers[,] and/or members and, therefore, upon . . . Defendant." (SAC ¶ 48.)

"To state a claim for unjust enrichment, a plaintiff must allege[:] '(1) that the defendant has received a benefit from the plaintiff[;] and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth. v. Township of West Milford*, 677 A.2d 747, 753 (N.J. 1996)). "No unjust enrichment claim may proceed absent a showing of a benefit—indeed, 'the basis of liability . . . springs from the benefit conferred.'" *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.,*

12

967 F.3d 218, 240 (3d Cir. 2020) (quoting *St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d 825, 827 (N.J. 1960)). "Quantum meruit similarly requires '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services.'"[5] *MHA*, 539 F. Supp. 3d at 361 (quoting *Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 796 A.2d 238, 242-43 (N.J. 2002)).

Where, as here, "a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Plastic Surgery Ctr.*, 967 F.3d at 240. Because the obligation the insurer owes typically springs from a plan, the health provider must plausibly establish that a plan exists, and the insurer "'received a benefit'—i.e., the discharge of its duties under that plan—'and that retention of that benefit without payment would be unjust[.]'" *Id.* at 241 (citations omitted). Therefore, if a benefit involves a plan-based duty, "there simply is *no* cause of action . . . if there is no plan." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff alleges an unjust enrichment and/or quantum meruit claim as to non-ERISA plan claims but does not reference duties owed to the insureds under these purported plans. (*See* SAC ¶¶ 47-53); *Genesis Lab'y Mgmt. LLC v. United HealthCare Servs., Inc.*, No. 21-12057, at *6 (D.N.J. Jan. 29, 2025) ("[The plaintiff] alleges an unjust enrichment and quantum meruit claim as

---

[5] "New Jersey courts have treated [unjust enrichment and quantum meruit claims] as parallel, and generally have held that quantum meruit requires a benefit conferred, even if that benefit may take the form of services." *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *9 (D.N.J. May 19, 2021) (citation omitted)); *see also MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. 2021) ("Without venturing into the differences between the two, '[r]ecovery under both of these doctrines requires a determination that defendant has benefitted from plaintiff's performance.'" (alteration in original) (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017))).

to *non-ERISA* plan claims. Without any reference to duties owed to the insureds under these non-ERISA plans, [plaintiff] 'does not plead allegations that allow this Court to infer that [plaintiff] unjustly retained a benefit under any plan without payment.'" (quoting *Abira Med. Lab'ys, LLC v. Zurich Am. Ins. Co.*, No. 23-03891, 2024 WL 2746102, at \*5 (D.N.J. May 29, 2024)).

Therefore, although the Second Amended Complaint alleges that Plaintiff conferred some benefit by performing Laboratory Testing Services (*see* SAC ¶ 48), the allegations are still lacking. Specifically, Plaintiff continues to fail to allege facts that plausibly establish that a duty is owed under any underlying non-ERISA plan. *See, e.g.*, *Abira Med. Lab'ys, LLC v. HealthSmart Benefit Sols.*, No. 23-3791, 2025 WL 937612, at \*7 (D.N.J. Mar. 28, 2025) (dismissing claims for unjust enrichment and quantum meruit because "[t]he allegation of an unspecified 'insurance contract' is insufficient" and the allegations do not "plausibly establish that a plan exists, or that the insurer discharged any duty at all, or that the discharge of that duty without payment would be unjust"). The Court, accordingly, grants Defendant's Motion to Dismiss Count Four.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted.[6] Plaintiff's Second Amended Complaint is dismissed without prejudice. Plaintiff will be afforded a final opportunity to address the deficiencies identified herein. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: _November 25,_ 2025

---

[6] Because the Court is granting Defendant's Motion to Dismiss the Second Amended Complaint in its entirety, it need not substantively address Defendant's alternative argument seeking staged discovery on anti-assignment provisions.