**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC.,<br><br>Defendant. | Civil Action No. 24-7375 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant United HealthCare Services, Inc.'s ("Defendant") Motion to Dismiss (ECF No. 29) Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostic's ("Plaintiff") Third Amended Complaint (the "TAC") (ECF No. 27). Plaintiff opposed (ECF No. 33), and Defendant replied (ECF No. 34). The Court has carefully considered the parties' submissions and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, Defendant's Motion to Dismiss is granted in part and denied in part.

# I. BACKGROUND[1]

## A. Factual Background

Plaintiff is a New Jersey limited liability company that performs "clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services on specimens submitted by medical service providers" (the "Laboratory Testing Services"). (TAC ¶¶ 7, 13, ECF No. 27.) Defendant "provides health insurance services throughout the United States" and maintains its principal place of business in Edina, Minnesota. (*Id.* ¶ 8.) At all relevant times, Plaintiff was "an out-of-network provider of laboratory testing services to Defendant['s] subscribers/members." (*Id.* ¶ 7.) Plaintiff alleges that "requisitions of laboratory testing services that were submitted on behalf of Defendant['s] insureds contained an assignment of benefits[.]" (*Id.* ¶ 14.) According to Plaintiff, these assignments of benefits "received under Defendant['s] insureds['] plans to Plaintiff, as assignee, creat[ed] contractual obligations on part of . . . Defendant[] to pay for the Laboratory Testing Services" that Plaintiff provided. (*Id.*) Specifically, the assignments executed by Defendant's insureds included the following:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate[,] authorize[,] and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation[,] or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws.

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the TAC as true and considers exhibits attached to the TAC. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *see also Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that the court can "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents" on a Rule 12(b)(6) motion (citation omitted)).

> Or
>
> I hereby authorize my insurance benefits to be paid directly to Genesis for services I received.
>
> Or
>
> By signing this authorization, I am acknowledging that payment(s) be made on my behalf to Genesis Diagnostics, Inc. for any services provided to me by Genesis Diagnostics, Inc. I also allow the release of any medical information necessary to process this claim.

(*Id.* ¶ 15 (fourth alteration in original).)

Between 2016 and May 1, 2019, Plaintiff submitted "numerous claims for reimbursement" to Defendant for the Laboratory Testing Services it performed for Defendant's insureds. (*Id.* ¶ 16.) Plaintiff attaches three exhibits to its TAC: (1) Exhibit 1, which is "a spreadsheet setting forth the patients who were rendered Laboratory Testing Services" which "contains the unique accession number for each claim, Defendant['s] insureds' subscriber identification, date of service, amount billed, amount paid, and other pertinent information" for over fifteen thousand claims for which Defendant paid Plaintiff for services rendered (Ex. 1 to TAC ("Ex. 1"), ECF No. 27-1; TAC ¶ 16); (2) Exhibit 2, which is a spreadsheet "setting forth the patients who were rendered Laboratory Testing Services, the dates of service, the amounts billed for those services, payments, paid status (partial or not paid), balances, policy numbers, and their respective accession numbers" (Ex. 2 to TAC ("Ex. 2"), ECF No. 27-2; TAC ¶ 17); and (3) Exhibit 3, which is a "spreadsheet containing instances where . . . Defendant paid for Laboratory Testing Services under the plan issued to the specific Defendant['s] insured, which patient/insured are also the subject of this lawsuit and referenced [in] Exhibit 2" (Ex. 3 to TAC ("Ex. 3"), ECF No. 27-3; TAC ¶ 18).

Plaintiff alleges that each patient referenced in Exhibit 2 "executed an assignment of benefits with respect to their original requisitions for services" and, as a result, "contractual obligations arose between Plaintiff and Defendant[.]" (*Id.* ¶¶ 19, 20.) Moreover, according to Plaintiff, contractual obligations also arose "by virtue of Defendant['s] conduct of processing and

paying (full or partial) Plaintiff's claims for Laboratory Testing Services" as noted in the Exhibits. (*Id.* ¶ 21.) Despite this, Defendant "blatantly disregarded" its "express obligations to pay Plaintiff for services requested and rendered" and "failed to respond . . . to properly submitted claims or fabricated some other pretextual basis to improperly refuse to make payment to Plaintiff." (*Id.* ¶¶ 22, 23.) Defendant also "selectively paid claims submitted by Plaintiff to provide . . . just enough so that Plaintiff would not file a lawsuit such as the instant case." (*Id.* ¶ 23.)

### B. Procedural Background

In June 2024, Plaintiff brought this case in the Superior Court of New Jersey, Mercer County, and Defendant removed to this Court. (*See generally* Not. of Removal, ECF No. 1.) Plaintiff filed an Amended Complaint in July 2024. (*See generally* Am. Compl., ECF No. 7.) Defendant moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure[2] 12(b)(6). (Def.'s Mot. to Dismiss Compl., ECF No. 8.) The Court granted Defendant's Motion to Dismiss the Amended Complaint, dismissing with prejudice two of the counts and dismissing without prejudice the remaining nine counts. (*See generally* Mar. 2025 Op., ECF No. 14; Mar. 2025 Order, ECF No. 15.) The Court gave Plaintiff an opportunity to file a second amended complaint. (Mar. 2025 Order 2.) Plaintiff filed its Second Amended Complaint (the "SAC") in April 2025. (*See generally* Second Am. Compl. ("SAC"), ECF No. 16.) Defendant moved to dismiss the SAC. (Def.'s Mot. to Dismiss SAC, ECF No. 20.) The Court granted Defendant's Motion to Dismiss the SAC, dismissing all four counts without prejudice and affording Plaintiff a final opportunity to amend its complaint. (*See generally* Nov. 2025 Op., ECF No. 25; Nov. 2025 Order, ECF No. 26.)

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

On January 9, 2026, Plaintiff filed the TAC alleging five causes of action: (1) a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* ("Count One"); (2) breach of contract ("Count Two"); (3) breach of implied covenant of good faith and fair dealing ("Count Three"); (4) quantum meruit or unjust enrichment ("Count Four"); and (5) promissory estoppel ("Count Five"). (*See generally* TAC.) Defendant now moves to dismiss the TAC for two reasons: (1) Plaintiff fails to identify any ERISA plan terms; and (2) Plaintiff fails to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br., ECF No. 29-1.) Plaintiff opposed (*see generally* Pl.'s Opp'n Br., ECF No. 33), and Defendant replied (*see generally* Def.'s Reply Br., ECF No. 34).

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

The Court finds that: (1) dismissal of Plaintiff's ERISA claim is proper because Plaintiff has failed to identify any ERISA plan terms; (2) Plaintiff adequately alleges claims for breach of contract and breach of implied covenant of good faith and fair dealing; and (3) Plaintiff fails to state a claim for unjust enrichment/quantum meruit or promissory estoppel. The Court addresses each finding in turn.

### A. ERISA Claim (Count One)

Plaintiff's ERISA claim was previously dismissed by this Court because Plaintiff failed to provide any allegations related to "any provision of any plan for which it alleges it is entitled to relief." (Nov. 2025 Op. 8.) Now, Defendant argues that Plaintiff's ERISA claim in the TAC fails for the same reason. (*See* Def.'s Moving Br. 7-8.) In opposition, Plaintiff argues that it was "not provided plan information or other identifying information to determine whether the underlying claim is subject to ERISA." (Pl.'s Opp'n Br. 15.) Such information, Plaintiff argues, would "need to be disclosed during the discovery phase of this action." (*Id.*)

"A claim for ERISA benefits 'stands and falls by the terms of the plan.'" *Abramson v. Aetna Life Ins. Co.*, No. 22-5092, 2023 WL 3199198, at *10 (D.N.J. May 2, 2023) (quoting *Atl. Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018

WL 5630030, at *7 (D.N.J. Oct. 31, 2018)). A plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). To state such a claim for relief, a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006) (citing 29 U.S.C. § 1132(a)(1)(B)). "In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan for which a court can infer this legally enforceable right." *Metro. Neurosurgery v. Aetna Life Ins. Co.*, No. 22-83, 2024 WL 4345287, at *5 (D.N.J. Sep. 30, 2024) (collecting cases). "A vague pleading that benefits are due[, therefore,] is not sufficient" and courts in this District "have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan." *Id.* (quoting *K.S. v. Thales USA, Inc.*, No. 17-7489, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019)).

Here, Plaintiff alleges that Defendant's "subscribers/members/insureds obtain insurance policies through the issuance of . . . Defendant['s] insureds/subscriber/member's [e]mployer" and that "[s]aid policy is an employee benefit plan that is regulated by [ERISA.]" (TAC ¶¶ 28, 29.) Plaintiff further alleges that, through the insurance plan participants' assignment of benefits, Plaintiff was transferred "the insured's right to payment under a plan and/or his right to sue for that payment." (*Id.* ¶ 30.) Plaintiff claims, however, that "[d]uring the claims administration process, Plaintiff is not provided a copy or access to the plan" and, as a result, "Plaintiff is not able to differentiate between those plans that are subject to ERISA and/or detail the underlying terms of said plan or policy[.]" (*Id.* ¶ 32.) Despite this, Plaintiff alleges that "Defendant['s] conduct of paying in excess of fifteen thousand . . . claims . . . is sufficient evidence reflecting that Defendant[]

ha[s], or at least ha[s] undertaken, an obligation to pay Plaintiff for the Laboratory Testing Services rendered by Plaintiff to Defendant['s] insureds under the plans." (*Id.* ¶ 33.)

Once again, the Court finds that Plaintiff has failed to state a claim for relief under ERISA. As this Court previously found, Plaintiff's claim in the SAC failed because Plaintiff did not identify any provision under any ERISA plan which entitles it to relief. (*See* Nov. 2025 Op. 8 (collecting cases)); *see also Emami v. Cmty. Ins. Co.*, No. 19-21061, 2021 WL 4150254, at *5 (D.N.J. Sep. 13, 2021) (finding plaintiff failed to state a claim under ERISA because the complaint "does not point to a specific provision within the ERISA [p]lan"). Here, Plaintiff attempts to overcome its lack of specific plan language by including spreadsheets of instances where Defendant paid Plaintiff, in whole or in part, for services rendered to the same patients under the same plans as those for which Defendant now allegedly refuses to pay. (*See generally* Exs. 1-3.) Yet, even with this additional information, Plaintiff still fails to allege facts regarding any plan language suggesting that it is entitled to payment under ERISA.[3] (*See generally* TAC); *see also Abira Med. Lab'ys v. Blue Cross Blue Shield of Fla.*, No. 23-1092, 2025 WL 2644763, at *1-2 (M.D. Fla. Sep. 15, 2025) (holding that plaintiff failed to state a claim under ERISA where it provided a "158-page exhibit listing the claims [the insurance company] allegedly failed to pay in whole or in part between 2016 and 2021, [but] include[d] no information as to which patients might be covered by ERISA plans").

Courts have made it clear that a plaintiff's failure to "point to, describe, or quote any language from the actual [insurer's] [p]lans" can be fatal to its ability to state an ERISA claim because "[o]nly the words of the [p]lan itself can create an entitlement to benefits." *Hudson Hosp.*

---

[3] Moreover, Plaintiff even admits that it "is not able to differentiate between those plans that are subject to ERISA and/or detail the underlying terms of said plan or policy for the Defendant['s] insureds referenced on Exhibit 2." (TAC ¶ 32.)

*OPCO, LLC v. Cigna Health & Life Ins. Co.*, No. 22-4964, 2023 WL 6439893, at *5-6 (D.N.J. Oct. 3, 2023) (third alteration in original) (quoting *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996)); *see also BrainBuilders, LLC v. Aetna Life Ins. Co.*, No. 17-3626, 2024 WL 358152, at *9 (D.N.J. Jan. 31, 2024) (dismissing ERISA claim where plaintiffs failed to cite to any particular plan); *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, No. 21-1703, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022) (same); *Emami*, 2021 WL 4150254, at *5 (same). Without more regarding the precise plan terms at issue, the Court finds that Plaintiff has failed to state an ERISA claim and accordingly grants Defendant's Motion to Dismiss Count One.

**B. Breach of Contract (Count Two)**

Plaintiff's breach of contract claim was previously dismissed by this Court because the SAC only contained "conclusory allegations that Defendant 'blatantly disregarded, among other of its duties, express obligations to pay Plaintiff for services requested and rendered' . . . [but] d[id] not adequately allege the existence of specific contract terms that obligate Defendant to pay for the Laboratory Testing Services in the first instance." (Nov. 2025 Op. 10 (quoting SAC ¶¶ 16, 37).) Defendant argues that dismissal of the TAC's breach of contract claim is once again appropriate, as Plaintiff "fails to plead an express or implied contract with identifiable terms[.]" (Def.'s Moving Br. 10.) In opposition, Plaintiff argues that the TAC contains sufficient allegations to allege a breach of contract and that the Court should find persuasive other cases from this District which allowed Plaintiff's breach of contract claim to move forward. (Pl.'s Opp'n Br. 18-22.)

Under New Jersey law, a breach of contract claim requires four elements: (1) "the parties entered into a contract containing certain terms"; (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe*

*Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). "The distinction between express and implied contracts rests on alternative methods of contract formation." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004); *see also Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) ("The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement."). When pleading a breach of contract claim, a plaintiff cannot rely on alleged "general obligation[s]" without tying the obligations to a specific contractual provision or requirement. *Perry v. Nat'l Credit Union Admin.*, No. 21-1305, 2021 WL 5412592, at *2 (3d Cir. 2021). Instead, a plaintiff must allege facts sufficient to establish a plausible inference that a contract exists and that it was violated. *Etrailer Corp. v. Unbeatable.com, Inc.*, No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (second alteration in original) (citation omitted)).

In its TAC, Plaintiff alleges that "Defendant['s] conduct of paying in excess of fifteen thousand . . . claims[,] as reflected [in] Exhibit 1[,] is sufficient evidence reflecting that Defendant[] ha[s] an obligation under the plans to pay Plaintiff for the Laboratory Testing Services rendered by Plaintiff to Defendant['s] insureds." (TAC ¶ 45.) Exhibit 1 contains "the unique accession number for each claim, Defendant['s] insureds' subscriber information, date of service, amount billed, amount paid, and other pertinent information reflecting claims previously paid by Defendant[]." (*Id.* ¶ 16; *see generally* Ex. 1.) According to Plaintiff, "Defendant[] entered into an implied or express agreement with Plaintiff to pay for the Laboratory Testing Services provided to the insureds, as evidenced by Defendant['s] prior and concurrent payment practices and the submission of claims by Plaintiff." (*Id.* ¶ 46.) Additionally, Plaintiff's Exhibit 2 contains a list of

"Laboratory Testing Services rendered by Plaintiff to Defendant['s] insureds" for which Defendant has not yet paid. (*Id.* ¶ 54; *see generally* TAC Ex. 2.) Plaintiff claims that Defendant breached its contractual obligation by "failing to pay Plaintiff for the claims submitted, despite [its] prior conduct of paying similar claims for other insureds and prior claims for the same insureds." (TAC ¶ 53.)

At this preliminary stage, construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged a breach of contract claim. Unlike in the SAC, Plaintiff now includes Exhibit 2 containing a list of "Laboratory Testing Services rendered by Plaintiff to Defendant['s] insureds" for more than "approximately $23,000,000" for which Defendant has failed to pay. (*Id.* ¶ 54; *see generally* TAC Ex. 2.) Moreover, Plaintiff identifies the insureds/claimants at issue, the amounts due for services rendered to each insured/claimant, and the specific language of the various assignments[4] executed by the insured/claimants. (*See generally* TAC; Exs. 1-3.)

Therefore, although Plaintiff fails to reference any specific contract provisions or any allegations related to preauthorization claims, the factual allegations in the TAC are sufficient to put Defendant on notice of the grounds for Plaintiff's breach of contract claim. *See Abira Med. Lab'ys, LLC v. Allied Benefit Sys., LLC,* No. 23-4002, 2025 WL 278651, at *3 (D.N.J. Jan. 23, 2025) (collecting cases); *Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, No. 23-05142, 2025 WL 278658, at *3 (D.N.J. Jan. 23, 2025) (holding that plaintiff

---

[4] Under New Jersey law, "contract rights are generally assignable except where assignment is prohibited by operation of law or public policy." *Abira Med. Lab'ys, LLC v. Highmark W. & Ne. N.Y., Inc.*, No. 24-1888, 2025 WL 278633, at *3 (D.N.J. Jan. 23, 2025) (quoting *Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J.*, 785 A.2d 457, 462 (N.J. Super. Ct. App. Div. 2001)). "An assignment of the right to payment logically entails the right to sue for non-payment." *Id.* (citing *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)).

adequately alleged a breach of contract claim because it "identified the insureds/claimants at issue, the amount due for the services rendered to each insured/claimant, the date of those services, and the specific language of the assignment executed by the insureds/claimants[]" even when plaintiff failed to identify "any specific portions of the underlying insurance contracts that [d]efendant allegedly violated"). Other district courts reviewing similar pleadings filed by the same Plaintiff have reached the same conclusion and allowed Plaintiff to further develop its breach of contract claim through discovery in those other matters. *See, e.g.*, *Allied Benefit Sys.*, 2025 WL 278651, at *3-4; *Abira Med. Lab'ys, LLC v. Harvard Pilgrim Health Care, Inc.*, No. 24-158, 2024 WL 4173781, at *6 (E.D. Pa. Sep. 12, 2024) (allowing the plaintiff's breach of contract claim to proceed where it "attached a chart as an exhibit . . . listing the patients insured by [defendant] that it allegedly performed laboratory testing services for, the dates of service, the amounts billed for those services, and the respective accension numbers for the claims"); *Abira Med. Lab'ys, LLC v. CareSource*, No. 24-157, 2024 WL 4817444, at *2 (S.D. Ohio Nov. 18, 2024) ("[The plaintiff] alleges that it received requisition documents with assignments from approximately 192 laboratory testing services for [the defendant's] members . . . . At the current stage, [the plaintiff] has plausibly shown a contractual relationship existed with [the defendant].").

Accordingly, Defendant's Motion to Dismiss Count Two is denied.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing (Count Three)

Plaintiff's breach of implied covenant of good faith and fair dealing claim was previously dismissed by this Court because Plaintiff failed to "adequately plead[] the existence of contract or a breach of certain terms[.]" (Nov. 2025 Op. 12.) Defendant argues that dismissal is appropriate now for the same reason. (*See* Def.'s Moving Br. 10-11.)

"[A] covenant of good faith and fair dealing is implied in every contract." *Ohm Sys., Inc. v. Senergene Sols., LLC*, No. 23-1340, 2023 WL 8437279, at *3 (D.N.J. Dec. 5, 2023) (citations omitted). To state a breach of the covenant of good faith and fair dealing, Plaintiff must allege sufficient facts showing Defendant "act[ed] in bad faith or engage[ed] in some other form of inequitable conduct in the performance of a contractual obligation." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 462-63 (D.N.J. 2020) (citation omitted).

Here, Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing by "fail[ing] and/or refus[ing] to respond to properly submitted claims or, for those claims in which Defendant[] did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless[.]" (TAC ¶ 60.) This claim is notably similar to Plaintiff's breach of contract claim. (*Compare id.* ¶ 60 *with id.* ¶ 52.) Generally, a breach of the covenant of good faith and fair dealing claim fails where the claim is "duplicative of the party's breach of contract claim." *Ohm Sys., Inc.*, 2023 WL 8437279, at *3 (citations omitted). Courts in this district, however, have allowed such claims to move forward "alongside alternative causes of action" where a "contract's existence or its specific terms are disputed[.]" *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 390 (D.N.J. 2015) (citations omitted).

Here, Plaintiff and Defendant disagree about both the existence of and the specific terms of the purported contract between them. (*See* TAC ¶ 3; Def.'s Moving Br. 10-11.) At this stage, "the Court cannot determine . . . whether the conduct alleged in Count [Three] 'differs from a literal violation of . . . a pertinent express term' or is governed by the express terms of a valid contract to warrant dismissal." *Allied Benefit Sys.*, 2025 WL 278651, at *4 (third alteration in original) (quoting *Spellman*, 150 F. Supp. 3d at 390). The Court finds that Plaintiff has adequately

alleged the elements of a breach of implied covenant of good faith and fair dealing claim and, therefore, denies Defendant's Motion to Dismiss Count Three.

**D. Quantum Meruit / Unjust Enrichment (Count Four)**

Plaintiff's quantum meruit/unjust enrichment claim was previously dismissed by this Court because Plaintiff "fail[ed] to allege facts that plausibly establish that a duty is owed under any underlying non-ERISA plan." (Nov. 2025 Op. 14 (citation omitted).) In its TAC, Plaintiff alleges that "Defendant['s] conduct of paying in excess of fifteen thousand . . . claims[,] as reflected in Exhibit 1[,] is sufficient evidence reflecting that Defendant[] ha[s] an obligation to pay Plaintiff for the Laboratory Testing Services rendered by Plaintiff to Defendant['s] insureds under the plans." (TAC ¶ 67.)

"To state a claim for unjust enrichment, a plaintiff must allege[:] '(1) that the defendant has received a benefit from the plaintiff[;] and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth. v. Township of West Milford*, 677 A.2d 747, 753 (N.J. 1996)). "No unjust enrichment claim may proceed absent a showing of a benefit—indeed, 'the basis of liability . . . springs from the benefit conferred.'" *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 240 (3d Cir. 2020) (quoting *St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d 825, 827 (N.J. 1960)). "Quantum meruit similarly requires[:] '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the

services.'"[5] *MHA*, 539 F. Supp. 3d at 361 (quoting *Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 796 A.2d 238, 242-43 (N.J. 2002)).

Where, as here, "a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Plastic Surgery Ctr.*, 967 F.3d at 240. Because an insurer's obligation typically springs from a plan, the health provider must establish that a plan exists, and the insurer "'received a benefit'—i.e., the discharge of its duties under that plan—'and that retention of that benefit without payment would be unjust[.]'" *Id.* at 241 (citation omitted). If a benefit involves a plan-based duty, "there simply is *no* cause of action . . . if there is no plan." *Id.* (emphasis in original) (quotation marks and citation omitted).

Here, Plaintiff again fails to reference any duties owed to the insureds under the relevant plans. (*See generally* TAC.) Instead, Plaintiff attempts to use Defendant's past payment of claims to allege that Defendant has an obligation to pay Plaintiff for the services it provided to the patients listed in Exhibit 2. (*Id.* ¶¶ 67-69.) Plaintiff fails to identify any specific plan or plan terms, a necessary element of any unjust enrichment claim against an insurer. *See Abira Med. Lab'ys, LLC v. Metro Risk Mgmt., LLC*, No. 23-20391, 2024 WL 3580759, at *6 (D.N.J. July 29, 2024) (dismissing quantum meruit/unjust enrichment claim because plaintiff's "allegations do not plausibly establish that a plan exists under which [d]efendants 'received a benefit' . . . [and] [do]

---

[5] "New Jersey courts have treated [unjust enrichment and quantum meruit claims] as parallel, and generally have held that quantum meruit requires a benefit conferred, even if that benefit may take the form of services." *MedWell, LLC v. Signa Corp.*, No. 20-10627, 2021 WL 2010582, at *9 (D.N.J. May 19, 2021) (citations omitted)); *see also MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. 2021) ("Without venturing into the differences between the two, '[r]ecovery under both of these doctrines requires a determination that defendant has benefitted from plaintiff's performance.'" (alteration in original) (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017))).

not identify what duties [d]efendants owed to the insureds under the specific terms of any plan"). The Court, accordingly, grants Defendant's Motion to Dismiss Count Four.

**E. Promissory Estoppel (Count Five)**

Defendant moves to dismiss Plaintiff's promissory estoppel claim, arguing Plaintiff fails to allege a "sufficiently clear and definite promise" from Defendant regarding payment.[6] (Def.'s Moving Br. 13.)

To state a claim for promissory estoppel in New Jersey, a plaintiff must adequately allege "four elements: (1) a clear and definite promise; (2) made with the expectation that the [plaintiff] will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros. Inc. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008) (citation omitted). "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct." *Wanaque Borough Sewerage Auth.*, 677 A.2d at 752 (quoting Restatement (Second) of Contracts § 5 cmt. a (1979)). A plaintiff's "general expectation" of a benefit, however, is insufficient to give rise to a cause of action for promissory estoppel. *Doe v. Princeton Univ.*, 790 F. App'x 379, 386 (3d Cir. 2019) (citing *E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp.*, 963 A.2d 865, 874-75 (N.J. Super. Ct. App. Div. 2009)).

Here, Plaintiff alleges Defendant's representatives requested services from Plaintiff on behalf of Defendant's insureds and that Defendant represented to Plaintiff that it would pay for services rendered to its insureds. (TAC ¶ 73.) Additionally, Plaintiff alleges that Defendant's

[6] The Court recognizes that Plaintiff brought a promissory estoppel claim in its First Amended Complaint, dropped this claim in its SAC, and re-pled this claim in its TAC. Defendant argues that by not re-filing a promissory estoppel claim within thirty days of the Court's dismissal of the First Amended Complaint, the estoppel claim was dismissed with prejudice. (Def.'s Moving Br. 13.) Out of an abundance of caution, the Court will consider whether Plaintiff has adequately alleged a promissory estoppel claim.

payment of at least fifteen thousand claims evidences its "obligation to pay Plaintiff for Laboratory Testing Services[.]" (*Id.* ¶ 74.) According to Plaintiff, it "in good faith relied upon and expected Defendant[] to comply with [its] payment obligations[,]" and therefore "Defendant[] ha[s] proximately caused damages to Plaintiff[.]" (*Id.* ¶¶ 78, 81.)

The Court finds that Plaintiff has failed to state a promissory estoppel claim. A promissory estoppel claim requires Plaintiff to point to a "definite promise" Defendant made and Plaintiff subsequently relied upon. (*See* Mar. 2025 Op. 15.) Here, Plaintiff alleges no such precise promise by Defendant, as Plaintiff only generally alleges, without providing additional facts regarding the alleged promise, that "Defendant[] represented to Plaintiff that the patients/insureds were all covered by policies of insurance . . . and that Defendant[] would pay[.]" (TAC ¶ 73); *Premier Orthopaedic Assocs. of S. NJ, LLC v. Aetna, Inc.*, No. 20-11641, 2021 WL 2651253, at *4 (D.N.J. June 28, 2021) (holding that plaintiff failed to state a promissory estoppel claim because it did not show a "precise promise [defendant] made").

Moreover, Defendant's previous payment of claims does not constitute the "promise" needed to state a promissory estoppel claim.[7] *See Genesis Lab'y Mgmt. LLC v. United HealthCare Servs., Inc.*, No. 21-12057, 2025 WL 325840, at *7 (D.N.J. Jan. 29, 2025) (dismissing plaintiff's

---

[7] This ruling is consistent with other courts' findings regarding Plaintiff's promissory estoppel claims in other matters. *See, e.g.*, *Abira Med. Lab'ys LLC v. Meritain Health, Inc.*, No. 24-3140, 2025 WL 920260, at *3 (E.D. Pa. Mar. 26, 2025) (dismissing promissory estoppel claim where plaintiff failed to "identify any express promise [defendant] allegedly made"); *Abira Med. Lab'ys LLC v. Golden Rule Ins. Co.*, No. 24-1407, 2025 WL 2550131, at *5 (S.D. Ind. Sep. 4, 2025) (dismissing plaintiff's promissory estoppel claim because it failed to allege any conduct on the part of the defendant that could be "construed as a promise"); *Abira Med. Lab'ys LLC v. Mut. of Omaha Ins. Co.*, No. 24-194, 2024 WL 4056573, at *18 (D. Neb. Sep. 5, 2024) (dismissing plaintiff's promissory estoppel claim because plaintiff failed to plead "sufficient allegations of a 'clear and definite promise' or 'reasonable reliance'").

promissory estoppel claim where it alleged a promise premised only on "[defendant's] purported course of conduct in having paid for certain claims").

The Court, accordingly, grants Defendant's Motion to Dismiss Count Five.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

MASHIPP

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: 8/12/, 2026